IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| FCC EQUIPMENT FINANCING, a division of CATERPILLAR, FINANCIAL SERVICES CORPORATION | : : : : : |
| Plaintiff, | : : |
| v. | : CASE NO.: 1:15-CV-00044 (LJA) |
| DAVID P. SUMRALL, SR., | : : |
| Defendant. | : : |

## ORDER

Before the Court is Plaintiff's Motion for Default Judgment. (Doc. 7). For the reasons that follow, Plaintiff's Motion for Default Judgment is **GRANTED**.

## BACKGROUND

On March 4, 2015, Plaintiff filed a Complaint alleging breach of guaranty agreements by Defendant P. Sumrall, Sr. (Doc. 1 ¶ 23). On March 10, 2015, Defendant was served at his residence with a summons and a copy of Plaintiff's Complaint. (Doc. 5). Defendant has failed to plead or otherwise defend the instant suit.

On April 6, 2015, the Clerk of this Court entered default against Defendant. (*See* Docket). On April 27, 2015, Plaintiff filed a Motion for Default Judgment under Fed. R. Civ. P. 55(b) along with a supporting Memorandum of Law and Affidavit. (Doc. 7). Plaintiff's Motion requests that the Court enter a default judgment against Defendant for breach of two guaranty agreements in which he agreed to pay all sums due to Plaintiff if either of two third-party corporations defaulted under the financing terms of master security agreements they executed with Plaintiff. Plaintiff's Motion also requests that the Court award damages against Defendant in the amount of $269,646 plus post-judgment interest at the legal rate. (Doc. 7-1 at 12). On August 10, 2015, the Court entered an Order directing Plaintiff to supplement its Affidavit with additional

1

evidence supporting an appropriate damages award. (Doc. 9). On August 19, 2015, Plaintiff filed its Supplemental Affidavit. (Doc. 11). Accordingly, the Court now proceeds to address Plaintiff's Motion for Default Judgment.

## DISCUSSION

### I. Default Judgment Standard

Prior to obtaining a default judgment, the party seeking judgment must first seek an entry of default. *See* Fed. R. Civ. P. 55(a). Pursuant to Fed. R. Civ. P. 55(a), the Clerk must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise." After a default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2). The Court must hold an evidentiary hearing to determine damages unless all essential evidence is already on the record. *See* Fed. R. Civ. P. 55(b)(2); *see also S.E.C. v. Smyth,* 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

The mere entry of default by the Clerk, however, does not in itself warrant the entry of default judgment by the Court. *See Nishimatsu Const. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).[1] Instead, the Court must find that there is a "sufficient basis in the pleadings for the judgment to be entered." *Id.* If the Court makes this finding, the clerk's entry of default causes all well-pleaded allegations of facts to be deemed admitted. *See Johnson v. Rammage,* No. 5:06-CV-057-CAR, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7 2007). Once satisfied that the pleadings sufficiently support a judgment against the defendant, the Court must consider issues of (1) jurisdiction, (2) liability, and (3) damages, prior to entering default judgment. *Johnson*, 2007 WL 2276847, at *1.

### II. Jurisdiction

The Complaint establishes that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and Plaintiff and Defendant are

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to

citizens of different states.  (Doc. 1 ¶ 3).  Further, the Complaint establishes that the Court has personal jurisdiction over Defendant, as he regularly conducts business in the State of Georgia.  (Doc. 1 ¶ 4).

### III.  <u>Defendant's Liability</u>

Defendant entered into two guaranty agreements, agreeing to secure certain debts incurred by Dairy Production Services, LLC ("Dairy Production") and New Frontier Dairy, LLC ("New Frontier") in the event that either company defaulted on specified agreements the two companies entered into with Plaintiff.  A detailed recitation of the facts is necessary to identify the relevant agreements and determine Defendant's attendant liability.  As a result of Defendant's failure to respond and the subsequent entry of judgment by the Clerk, the following well-pleaded allegations in Plaintiff's Complaint, (Doc. 1), and Supplemental Affidavit, (Doc. 11), are accepted as true.

Because the allegations set forth in the Complaint suffice to state breach-of-guaranty claims under Georgia law, the Court finds Defendant is liable to Plaintiff.  Furthermore, entry of default judgment against Defendant is appropriate pursuant to Rule 55, given Defendant's failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint.

On or about June 21, 2005, Dairy Production entered into a Master Security Agreement ("MSA 1") with Plaintiff.  The terms of MSA 1 enabled Dairy Production to finance the purchase of equipment from Plaintiff on a going-forward basis.  As part of the consideration for Plaintiff's execution of MSA 1 with Dairy Production, Dairy Production agreed to pay Plaintiff amounts owed, as specified in any subsequently-agreed Schedules of Indebtedness and Collateral, and to grant Plaintiff a security interest in equipment purchased by Dairy Production.

On or about February 10, 2009, Dairy Production entered into Schedule of Indebtedness and Collateral Number 3 ("DP Schedule 3") to MSA 1 with Plaintiff to finance the purchase of one (1) tractor truck ("Tractor 1").  Under the terms of DP Schedule 3, Dairy Production promised to pay Plaintiff the total sum of $248,910.60, representing principal and precomputed interest, over 60 months, beginning March 17, 2009.

On or about January 23, 2008 New Frontier entered into a Master Loan and Security Agreement ("MSA 2") with Plaintiff.  The terms of MSA 2 enabled New Frontier to finance the purchase of equipment from Plaintiff on a going-forward basis.  As part of the consideration for

---

October 1, 1981.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Plaintiff's execution of MSA 2 with New Frontier, New Frontier agreed to pay Plaintiff amounts owed, as specified in any subsequently-agreed Schedule of Indebtedness and Collateral, and to grant Plaintiff a security interest in equipment purchased by New Frontier.

On or about January 23, 2008, New Frontier entered into Schedule of Indebtedness and Collateral Number 1 ("NF Schedule 1") to MSA 2 with Plaintiff to finance the purchase of two (2) utility vehicles ("Utility Vehicle 1" and "Utility Vehicle 2") and three (3) tractors ("Tractor 2," "Tractor 3," and "Tractor 4").  Under the terms of NF Schedule 1, New Frontier agreed to pay Plaintiff the total sum of $193,171.20, representing principal and precomputed interest, over 48 months, beginning February 29, 2008.

On or about March 27, 2008, New Frontier entered into Schedule of Indebtedness and Collateral Number 2 ("NF Schedule 2") to MSA 2 with Plaintiff to finance the purchase of two (2) feed mixers ("Feed Mixer 1" and "Feed Mixer 2").  Under the terms of NF Schedule 2, New Frontier agreed to pay Plaintiff the total sum of $171,638.88, representing principal and precomputed interest, over 48 months, beginning May 8, 2008.

On or about November 4, 2008, New Frontier entered into Schedule of Indebtedness and Collateral Number 3 ("NF Schedule 3") to MSA 2 with Plaintiff to finance the purchase of one (1) tractor ("Tractor 5") and one (1) compost turner (the "Compost Turner").  Under the terms of NF Schedule 3, New Frontier agreed to pay Plaintiff the total sum of $127,900.80, representing principal and precomputed interest, over 48 months, beginning December 7, 2008.  "Tractor 1," "Tractor 2," "Tractor 3," "Tractor 4," "Tractor 5," "Utility Vehicle 1," "Utility Vehicle 2," "Feed Mixer 1," "Feed Mixer 2," and "Compost Turner" are referred to collectively herein as the "Collateral."

On or about June 17, 2005, Defendant entered into a Guaranty agreement with Plaintiff ("DP Guaranty") and on January 23, 2008, Defendant entered into a second Guaranty agreement with Plaintiff ("NF Guaranty").  Under the terms of the DP Guaranty, Defendant agreed to pay to Plaintiff all sums due in the event of any default by Dairy Production under MSA 1 and DP Schedule 3, and any net proceeds owed in the event that Plaintiff sold any of the underlying Collateral.  Similarly, under the terms of the NF Guaranty, Defendant agreed to pay to Plaintiff all sums due in the event of any default by New Frontier under MSA 2, NF Schedule 1, NF Schedule 2, and NF Schedule 3 and any net proceeds owed in the event that Plaintiff sold any of the

underlying Collateral.

Dairy Production and New Frontier failed to pay amounts due under the Master Security Agreements and Schedules at issue in this action. Subsequently, both corporations filed for relief under Chapter 11 of Title 11 of the United States Code on October 7, 2010. The Liquidating Trustee did not object to Plaintiff's plan to sell the Collateral, noting that the Collateral was not the property of the bankruptcy estate. Plaintiff sold the Collateral and applied the proceeds towards Dairy Production's and New Frontier's outstanding indebtedness.

After application of the net proceeds from the Collateral sale, $118,007.58 in total principle and interest was due under MSA 1 and DP Schedule 3 as of September 5, 2013,[2] with additional interest accruing at a per diem rate of $29.06 thereafter. After application of the net proceeds from the Collateral sales, $33,532.65 in total principle and interest was due under MSA 2 and NF Schedule 1 as of February 7, 2013, with additional interest accruing at a per diem rate of $6.43 thereafter. After application of the net proceeds from the Collateral sales, $33,598.18 in total principle and interest was due under MSA 1 and NF Schedule 2 as of April 17, 2013, with additional interest accruing at a per diem rate of $5.96 thereafter. After application of the net proceeds from the Collateral sales, $49,090.05 in total principle and interest was due under MSA 1 and NF Schedule 3 as of June 25, 2013, with additional interest accruing at a per diem rate of $13.50 thereafter.

### IV. Plaintiff's Damages

Having concluded that Defendant Sumrall is liable to Plaintiff for breach of guaranty and that Plaintiff is entitled to entry of default judgment, the Court must now determine the appropriateness of Plaintiff's requested recovery. Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F.Supp.2d 588, 593 n.5 (S.D. Ala. 2007).

---

[2] Pursuant to the supporting documentation provided by Plaintiff, the Court measures the net amounts owed under each relevant Schedule from the date on which Plaintiff's evidence establishes that it received net proceeds from sale of the

5

As a general rule, the court may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits. *DirecTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003). However, the decision whether to call for a hearing before awarding damages in a default judgment rests in the district court's discretion. Fed. R. Civ. P. 55(b)(2). Here, no evidentiary hearing is necessary to determine damages because there is enough evidence on record to calculate the sum of Plaintiff's damages.

To prove its damages, Plaintiff submitted separate affidavits of Penelope McCullough, Special Accounts representative for Plaintiff, and of Steven R. Press, counsel of record for Plaintiff; and also referred the Court to the relevant Master Service Agreements and Schedules attached to Plaintiff's Complaint. (Docs. 1, 1-2 through 1-9, 7-2, and 11). Accordingly, the Court finds that Plaintiff has demonstrated that it is entitled to recover against Defendant for breach of guaranty in the amount of $281,739.09.[3]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Default Judgment, (Doc. 7), is **GRANTED**. The Court **DIRECTS** the Clerk to enter judgment against Defendant Sumrall in the amount of $281,739.09.

**SO ORDERED**, this __21st__ day of August, 2015.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

collateralized assets. (*See* Docs. 11-1 through 11-4).

[3] Plaintiff's evidence confirms that the total principal and interest outstanding and unpaid under MSA 1 and DP Schedule 3 as of the date of this Order is $138,785.48 (($29.06 x 715 days = $20,777.90) + $118,007.58). (See Doc. 7-2 ¶ 5). Plaintiff's evidence confirms that the total principal and interest outstanding and unpaid under MSA 2 and NF Schedule 1 as of the date of this Order is $39,480.40 (($6.43 x 925 days = $5,947.75) + $33,532.65). (*See id.* ¶ 6). Plaintiff's evidence confirms that the total principal and interest outstanding and unpaid under MSA 2 and NF Schedule 2 as of the date of this Order is $43,038.82 (($5.96 x 856 days = $5,101.76) + $37,937.06). (*See id.* ¶ 7). Further, Plaintiff's evidence also confirms that the total principal and interest outstanding and unpaid under MSA 2 and NF Schedule 3 as of the date of this Order is $59,714.55 (($13.50 x 787 days = $10,624.50) + $49,090.05). (*See id.* ¶ 8).